# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSÉ D. GARCÍA-HERNÁNDEZ,<br><br>Defendant. | CRIMINAL NO. 18-324 (PAD) |

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

On May 25, 2018, the court revoked the U.S. Magistrate Judge's decision granting bail, ordering defendant detained without bail pending trial (Docket No. 21). Following are the grounds in support of the court's ruling.[1]

## I. BACKGROUND

On May 10, 2018, defendant was charged with possession with intent to distribute controlled substances and possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 924(c)(1)(A), respectively (Docket No. 3). On May 24, 2018, U.S. Magistrate Judge Camille L. Vélez-Rivé held the arraignment/detention hearing: (1) setting bail in the amount of $20,000.00 cash or secured by property; and (2) committing defendant to home incarceration with electronic monitoring and standard conditions of release. Id.[2]

---

[1] In preparing this Memorandum and Order, the court listened to the recording of the hearing held before the Magistrate Judge. With limited exceptions and contrary to the U.S. District Judges, Magistrate Judges do not have a Court Reporter present during the numerous proceedings held before them. Therefore, unless a transcript is requested following the applicable rules and regulations, no transcript is prepared or available for those proceedings. The content of the hearing, however, is always recorded using a Digital Court Recording "DCR" program. District Judges have immediate access to DCR audio files, and may listen to the audio files when reviewing a determination made by a Magistrate Judge.

[2] During a side bar, the Magistrate Judge expressed concern about a medical problem in defendant's eye and that he may not receive

On May 24, 2018, the government filed a "Motion for Stay and Revocation of Bail Order or for Stay of Bail Order and Request for De Novo Bail Hearing" (Docket No. 12). That same day, the court scheduled a *de novo* hearing for May 25, 2018 (Docket No. 13). The hearing was held as scheduled (Docket No. 21). Based on the information received during the hearing, the court ordered that defendant be detained without bail pending trial. Id.

## II. STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Holland, 922 F.Supp.2d 70, 71 (D.D.C. 2013).

Once triggered, the presumption imposes on the defendant a burden of production. United States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990). The burden is not heavy. United States v. Stone, 608 F.3d 939, 946 (6th Cir. 2010). It is satisfied introducing at least some evidence

---

adequate treatment at the detention facility, Metropolitan Detention Center-Guaynabo ("MDC-Guaynabo"). Upon conclusion of the side bar, she restated her concern with respect to defendant's eye condition; and noted that defendant: (1) has no prior record, and (2) has strong family ties and a property with high equity to secure bail.

contrary to the facts presumed. Id. Rebuttal evidence does not destroy the presumption, which does not disappear, maintaining evidentiary weight. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); O'Brien, 895 F.2d at 814-815.

The government retains the burden of persuasion throughout, in both presumption and non-presumption cases. Stone, 608 F.3d at 946; Bess, 678 F.Supp.929 at 932; United States v. Bess, 678 F.Supp. 929, 932 (D.D.C. 1988). To determine if it has met that burden, the court must consider: (1) the presumption (if applicable); (2) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (3) the weight of the evidence; (4) the history and characteristics of the defendant; and (5) the danger posed to the community by defendant's release. 18 U.S.C. § 3142(g); United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990). The court must state in writing the reasons for the action taken. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989); O'Brien, 895 F.2d at 813.

### III. DISCUSSION

**A. Presumption**

The presumption applies in this case. Defendant has been charged with controlled substance and firearms violations exposing him to life in prison. Transcript of De Novo Hearing ("Transcript") at p. 2.[3] See, United States v. Lattner, 23 Fed. Appx. 363, * 1 (6th Cir. 2001)

---

[3] District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of the same. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. And it is also available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made by any interested party, or the transcript is filed for the record in the court.

(presumption triggered as defendant was charged with offense carrying potential maximum term of not less than ten years of imprisonment under the Controlled Substances Act); United States v. Rojas-Batista, 2018 WL 2214743, *2 (D.P.R. May 14, 2018)( presumption applied in case involving exposure to two life sentences for controlled substance violations). For discussion purposes, the court will assume that the presumption has been rebutted and by extension, that it retains evidentiary weight to be evaluated along with the criteria set forth in 18 U.S.C. § 3142(g).

**B. Detention Factors**

1. Nature and Circumstances of Offenses

The offenses allegedly occurred while defendant was an officer of the Puerto Rico Police Deparment ("PRPD") assigned to the Vega Baja Drug Division in Puerto Rico. Transcript at pp. 2-3; Docket No. 12 at pp. 3-4. The government proffered that, as a police officer, defendant had access, information and contacts in the criminal world – including locations, names and phone numbers of confidential informants. Id. at p. 3. He was involved in a search and seizure in which over 30 pounds of marijuana were seized, including a type of marijuana paste similar to what would be hashish. Id. at p. 4. He extracted some of the marijuana from the packages seized and approached another officer – who was a confidential informant – to find a buyer for that marijuana. Id. The marijuana was eventually sold to the FBI, and defendant received payment. Id. The conduct included not only distributing marijuana, but also preparing and submitting false paperwork. Id. All, while defendant was armed. Id.

Moreover, the government proffered there is evidence that defendant participated in what are known as "desk warrants." For those, police officers receive information from a source, prepare a warrant based on those facts and not on actual surveillances; and lie to judges and prosecutors as to the facts and circumstances in support of the affidavit. Id. at p. 5. Here, those

sources would go to drug points to gather information for the defendant and other officers of the Vega Baja drug unit and make drug purchases while defendant and his colleagues allowed them to keep the drugs. Id. at pp. 5-6. If the confidential source did not want to keep the drugs, defendant and the other officers would throw the drugs out on the trash were anybody out in the community could come in contact with the drugs. Id. at p. 5. He faces life imprisonment. In consequence, the offenses charged, their underlying circumstances, and the statutory sentencing exposure favor detention.[4]

2. Weight of Evidence

The evidence against defendant is strong. The government pointed to video recordings and audio recordings of the plan and execution, including a conversation between the confidential informant and defendant in which defendant states how was going to go to the drug division in the early morning hours to extract marijuana from seized packages. Further, there are video-recordings of defendant receiving money from the sale of the marijuana; and testimony of individuals with firsthand knowledge of relevant events. Id. at pp. 8-9; Docket No. 12 at p. 5. Thus, the weight of evidence favors detention.[5]

3. History and Characteristics of the Defendant

Defendant is forty years of age (Pretrial Services Report at p. 1). He is married and the father of three (3) children. Id. He completed an associate's degree in Criminal Justice from the Puerto Rico Police Academy in Gurabo, Puerto Rico. Id. at p. 2. He is a Spanish language speaker and fluent in English. Id. He has been a lifelong resident of this district. Id. From birth to 2003, he resided in Barceloneta. Since 203, he has been residing in Camuy. Id. He reported that he does

---

[4] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment. Moss, 887 F.2d at 336.

[5] Defendant so acknowledged at the hearing. Transcript at p. 9.

not have a U.S. passport and has never traveled outside of the United States. Id. He has been a PRPD Police Officer for 18 years, and has no prior convictions. Id. at p. 3. On balance, these elements favor release.

    4.   <u>The Danger Posed to the Community by Defendant's Release</u>

Defendant contends that several factors weigh in favor of upholding the Magistrate Judge's determination and support the conclusion that he is not a danger to the community. In particular, he claims that: (i) he is a first time offender; (ii) in the government's proffer there is no allegation of use of force of violence by him; (iii) his family is very supporting; (iv) he does not have a passport; and (v) the Section 924(c) charge stems from his use of his regulation firearm, which has been confiscated as part of his suspension from the PRPD.[6] Transcript at pp. 9, 11-12. The crux of his argument, however, revolves around his medical condition.

To that end, defendant states that he was tased by accident in his left eye and currently has nine stitches in that eye, which must be removed on a monthly basis without anesthesia. Id. at p. 10. The physicians who performed the surgery carry out these procedures as part of a collaborative effort. Id. at pp. 10-11. Further, defendant complained that he has not received two of his prescribed medications at MDC-Guaynabo, causing him severe pain. He claims that MDC-Guaynabo does not have the ability to take care of his condition in any way, and that "there is no intention of properly tending to him medically." Id. at pp. 10-11.[7] Accordingly, he argues that allowing him to remain under the conditions of release that the Magistrate Judge imposed would

---

[6] He further stated that he does not own a personal firearm. Id.

[7] Defendant also proffered that he has a "very serious" back issue and high blood pressure. Transcript at p. 11.

not pose a danger to the community while permitting him to attend his medical appointments. Id. at pp. 9-10.[8]

First, while is true that defendant was granted bail because of concerns as to MDC-Guaynabo's ability to properly take care of his eye condition, the government addressed and clarified those concerns to the court's satisfaction during the *de novo* hearing with the testimony of Dr. Orlando Valleo, MDC-Guaynabo's Acting Clinical Director, and Dr. Tania Macias, MDC-Guaynabo's Health Services Administrator. Doctor Vallejo testified that, pursuant to BOP policy, inmates are evaluated upon arrival with an inter-screening process, where they notify MDC-Guaynabo about their health conditions and medications. He explained that based on the information that defendant provided, MDC-Guaynabo gave him two eye drops and one medication for high blood pressure. He pointed out that MDC-Guaynabo has 15 days to complete a history and physical examination. Transcript at pp. 21-23. However, doctor Macias observed that considering defendant's time-sensitive eye condition, defendant's complete medical examination would be done in an expedited manner. Id. at pp. 29-34.

Additionally, the doctors indicated that MDC-Guaynabo has an ophthalmologist under contract available to provide the appropriate medical care to defendant, and that there is no issue in having the ophthalmologist contact defendant's doctors to receive his medical file and background. Id. To facilitate treatment by the contract specialist, the court ordered defendant to obtain and provide copies of his medical records to MDC-Guaynabo's medical staff. Taking into account the whole picture, MDC-Guaynabo has the resources to tend to the defendant's eye condition. And as the court expressed during the hearing, defendant is free to bring any additional

---

[8] At side bar, defendant made an additional proffer as to risk of flight. Transcript at pp. 13-16. But the government clarified that it was not arguing risk of flight, but danger to the community.

information pertaining to his medical condition by way of his treating physicians to the court's attention at any time. Id. at p. 31.

Second, the government proffered that defendant went to a location where two individuals had just been arrested and were waiting to be interviewed by ATF, and, in front of other individuals, instructed the two arrestees on what they were supposed to say in order to try to get one of those two individuals off the charges. Transcript at p. 18; Docket No. 12 at p. 3 (adding that defendant had attempted to obstruct the cooperation of an individual that was arrested by HIS, by instructing the individual not to cooperate with the "Feds" (federal authorities), not to provide any information, and not to provide any information to federal agents on other matters or investigations). So the contention that defendant is not a danger to the community is belied by his own acts. See, United States v. LaFontaine, 210 F.3d 125, 132 (2d Cir. 2000)(witness tampering supported detention or revocation of bail).

Third, defendant was a PRPD officer who violated the law taking advantage of his position of trust to possess with intent to distribute marijuana, using his service weapon in furtherance of a drug trafficking crime. He did so notwithstanding his link to his family and the community. Considering his former position as police officer, his background in weapons handling, and his contacts with people involved in drug points and other criminal activity, his release would be dangerous to the community. Drug offenses pose a special risk of dangerousness to society. See, United States v. Lattner, 23 Fed. Appx. 363, 364 (6th Cir. 2001)(so recognizing). And the drug charge is "further aggravated by the weapons charge against the defendant." United States v. Reyes-Alicea, 2017 WL 120877, *4 (D.P.R. January 12, 2017)(quoting, United States v. Vega-Sosa, 2011 WL 693606, *2 (D.P.R. Feb. 24, 2011)).

## IV. CONCLUSION

Having carefully considered all the evidence as well as the available range of release conditions, the court concludes that the government has shown, by clear and convincing evidence, that no condition or combination of conditions will assure the safety of the community if defendant is released. The nature and circumstances of the offenses charged, including potential penalty; the weight of the evidence; and danger to the community outbalance other elements in defendant's personal and history and characteristics arguably supporting release. The evidentiary weight of the rebutted presumption (assuming it was rebutted), lends added support for this conclusion. In consequence, the defendant shall be detained without bail pending trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of June, 2018.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge